O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD M. HOOD, | CASE NO. SACV 08-0583 AG (JWJx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| TIME WARNER CABLE LLC d/b/a TIME WARNER CABLE; DOES 1 through 50, inclusive, | |
| Defendants. | |

Defendant Time Warner Cable, LLC ("TWC") has filed a Motion for Summary Judgment ("Motion"). After considering all papers and arguments submitted, the Court GRANTS in part and DENIES in part the Motion.

## BACKGROUND

This case is a disability discrimination action brought by Plaintiff Todd M. Hood ("Plaintiff") against his former employer, TWC. TWC provides cable television, high speed Internet, and digital telephone services to customers across the country. (Cope Decl. ¶ 2.) In

2002, Plaintiff was hired by TWC as an "installation supervisor" or "field supervisor." (Compl. ¶ 9; Hood Dep. 43:16-25, 44:1-2.) That job involved supervising a team of eight to ten field technicians, who were responsible for installing cable lines and equipment at the homes and businesses of TWC's customers. (Hood Dep. 43:21-25, 55:15-22, Ex. 13; Gilmour Dep. 152:23-153:12.) Because those cable lines run through buried pipe or, more frequently, between telephone poles, there is a significant physical component of the field technician job. Field technicians must be able to, among other things, climb ladders, lift large objects, maneuver through tight crawl spaces, and access roof lines. (Hood Dep. 44:17-24; Cope Decl. ¶ 5; Gilmour Decl. ¶ 3.) As an field supervisor, Plaintiff was encouraged to spend time "out in the field" training field technicians and supervising their work. (Hood Dep. 72:21-73:4; Gilmour Decl. ¶¶ 4-7.) Plaintiff was also required to respond to customer complaints, respond to emergency situations, and conduct "quality control" checks to review the work of his field technicians. (Hood Dep. 64:14-22, 65:5-23, 152:25-153:15; Gilmour Dep. 20:6-22:22; Gilmour Decl. ¶¶ 7, 8.) Conducting "quality control" included checking cable installation wiring, approving field technicians' craftsmanship, and ensuring that cables were properly attached. Plaintiff asserts that he spent time in the field engaging in supervisory duties and doing technician work to "get the job done." (Hood Dep. 123:22-124:3; Gilmour Dep. 156:24-157:14.)

During his employment with TWC, Plaintiff also served in the Army Reserves. (Compl. ¶ 10.) In February 2003, Plaintiff seriously injured his back while preparing for deployment to Iraq. (Compl. ¶ 10.) Nevertheless, Plaintiff was deployed to Iraq, and returned in or around April 2004. (Compl. ¶ 11.) Plaintiff resumed work for TWC in May 2004, while continuing a "conservative" course of medical treatment for his back injury. (Compl. ¶ 11.) In November 2006, Plaintiff was scheduled for back surgery on December 13, 2006. That surgery was successfully performed. At Plaintiff's request, TWC granted Plaintiff a medical leave of absence until March 20, 2007. (Casaw Dep. Ex. 3.)

In early March 2007, Plaintiff applied for a "contract supervisor" position at TWC. (Cope Reply Decl. ¶ 4.) Plaintiff interviewed for the position on March 15, 2007, but TWC

1  ultimately eliminated the position.  (Cope Reply Decl. Ex. A.)

2       On March 16, 2007, Plaintiff and his physician, Ram Mudiyam ("Mudiyam"), provided a

3  "Notice of Disability Status" to TWC.  Mudiyam stated that Plaintiff was to remain off of work

4  until March 20, 2007, and that when he returned to work, Plaintiff was restricted from lifting

5  objects greater than 10 pounds, repetitive bending or stooping, prolonged weight bearing,

6  prolonged sitting or standing, and twisting.  (Hood Dep. 159:7-160:2, 159:7-160:2, Ex. 24.)

7  After reviewing these restrictions, TWC determined that Plaintiff could not yet return to his

8  position as a field supervisor and extended his leave of absence.

9       On March 27, 2007, Plaintiff and Mudiyam provided TWC another "Notice of Disability

10  Status."  That notice stated that Plaintiff could return to work on April 2, 2007, with certain

11  restrictions.  (Hood Decl. Ex. H.)  Instead of giving specific restrictions, however, the notice

12  simply stated that Plaintiff was restricted "as per fulfillment supervisor job description."  (Hood

13  Decl. Ex. H.)  On March 30, 2007, TWC contacted Mudiyam's office to inquire about the March

14  27 notice.  TWC faxed Mudiyam's office a field supervisor job description, which listed the

15  job's working conditions and physical requirements.  (Hood Decl. Ex. I.)  The job description

16  specified, among other things, that Plaintiff spent between one- and two-thirds of his work day

17  stooping, kneeling, crouching, bending, twisting, or crawling; that Plaintiff spent at least some of

18  his work day climbing or balancing; and that Plaintiff spent between one-third and two-thirds of

19  his work day standing.  (Hood Decl. Ex. I.)  TWC requested that Mudiyam review the job

20  description and update the March 27 notice as necessary.  (Hood Decl. Ex. I.)

21       On April 5, 2007, Mudiyam's office faxed TWC back the job description.  On the last

22  page, Mudiyam wrote that Plaintiff was restricted from lifting objects weighing over 25 pounds.

23  (Hood Decl. Ex. I.)  After reviewing these restrictions, TWC once again determined that Plaintiff

24  was unable to return to his position as a field supervisor.  TWC based its decision on a

25  determination that it could not reasonably eliminate the lifting or climbing requirements of

26  Plaintiff's job, especially as supervisors are often required to "go out into the field"

27  unaccompanied.  (Cope Decl. ¶ 17.)

28       TWC then encouraged Plaintiff to seek an alternate position within the company.  In May

1    2007, TWC sent Plaintiff at least three emails listing vacant positions.  (Hood Decl. ¶ 14.)  In a

2    May 14, 2007 email, Lizabeth Cope, Director of Employee Services at TWC, wrote: "Todd, here

3    are a few of our current postings – any of these may be options for you."  (Hood Dep. 191:9-19,

4    Ex. 32.)  Plaintiff spoke to TWC about a position as a warehouse supervisor.  (Hood Dep.

5    170:20-171:9.)  While that job had a lifting requirement, TWC told Plaintiff that other

6    employees could do any required lifting for him.  (Hood Dep. 171:8-9.)  Unlike field

7    supervisors, TWC explains, warehouse supervisors have other employees nearby at all times.

8    Plaintiff did not apply for the warehouse supervisor position, and he did not apply for or inquire

9    about any other positions.  In fact, Plaintiff eventually told TWC that he wanted to be "a field

10   supervisor and only a field supervisor."  (Hood Dep. 193:16-17.)  TWC continued to provide

11   Plaintiff a leave of absence until he could return to his job as a field supervisor or begin work in

12   another position.

13        Plaintiff asserts that during this period, Elizabeth Casaw ("Casaw"), a Human Resources

14   Coordinator at TWC, told him that he would be terminated as soon as his long-term disability

15   benefits kicked in.  (Hood Dep. 172:14-15.)  Plaintiff became eligible to receive long-term

16   disability benefits on June 13, 2007.  (Cope Dep. 210:24-211:12, Ex. 10.)  On June 12, 2007,

17   Plaintiff emailed Ben Gilmour ("Gilmour"), Plaintiff's supervisor at TWC, stating that he had

18   been informed that "as of the 13th [of June] I am no longer employed with Time Warner."

19   (Gilmour Dep. Ex. 13.)  Plaintiff stated that he was writing the email "in a final effort to come

20   back to work."  (Gilmour Dep. Ex. 13.)  The next day, Gilmour replied to Plaintiff's email,

21   stating, "I have not been informed by Human Resources that your employment is ending on the

22   13th."  (Gilmour Dep. Ex. 13.)  Gilmour advised Plaintiff to "work directly with [Human

23   Resources]" on the issue.  (Gilmour Dep. Ex. 13.)  On Tuesday, June 19, 2007, Plaintiff emailed

24   Gilmour again, stating:

25

26              I have worked with HR for the last six months.  My Long Term

27              Disability was approved on Monday and Liz Cope was also notified.

28              As per my conversations with Corporate HR and Division HR, my

4

1  position will be terminated based on that.

2

3  (Gilmour Dep. Ex. 13.)  That same day, Gilmour replied to Plaintiff's email, stating:

4

5  I'm certain that Human Resources made every effort, in compliance

6  with applicable regulations and policies, to insure that the

7  appropriate decision was made to return you to work in the field

8  supervisor position **only** when you were fully released to do so, and

9  encouraged you to pursue other employment options for which you

10  qualify.  I enjoyed working with you and wish you all the best for the

11  future and hope that you are able to fully recover from your back

12  injury.  If you need any further assistance, do not hesitate to contact

13  either [Gannon or Cope] . . . it my understanding [*sic*] that they have

14  the most knowledge regarding your disability and are here to help.

15  Again, good luck with your future endeavors.

16

17  (Gilmour Dep. Ex. 13.)

18  In August 2007, Cope, with the authorization and approval of Stacy Gannon ("Gannon"),

19  Vice-President of Human Resources at TWC, terminated Plaintiff.  (Compl. ¶ 25.)  The "Notice

20  to Employee of Change in Relationship" accompanying Cope's letter to Plaintiff stated:

21  "LEAVE OF ABSENCE – Unable to return from leave – eligible for LTD."  (Cope Dep. Ex.

22  12.)  Cope acknowledges that the decision to terminate Plaintiff was made some time prior to

23  July 18, 2007.  (Cope Dep. 90:25-91:6.)  TWC asserts that the decision was based on Plaintiff's

24  inability to perform the essential functions of his job with or without reasonable accommodation.

25  Based on these facts and others, Plaintiff brought three claims against TWC, numbered as

26  follows: (1) wrongful termination based on medical condition in violation of California's Fair

27  Employment and Housing Act ("FEHA"), Govt. Code § 12940; (2) failure to accommodate in

28  violation of FEHA, Govt. Code § 12940; and (3) wrongful termination in violation of public

1  policy.  TWC now moves for summary judgment of all three claims and Plaintiff's request for

2  punitive damages.

3

4  **LEGAL STANDARD**

5

6       Summary judgment is appropriate only where the record, read in the light most favorable

7  to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

8  the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also*

9  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the

10  proof or defense of a claim, and are determined by reference to substantive law.  *Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is

12  such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  In

13  deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed,

14  and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But the Court need not

15  "assume the truth of legal conclusions merely because they are cast in the form of factual

16  allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

17       The burden initially is on the moving party to demonstrate an absence of a genuine issue

18  of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

19  then the non-moving party must produce enough evidence to rebut the moving party's claim and

20  create a genuine issue of material fact.  *See id.* at 322-23.  If the non-moving party meets this

21  burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210

22  F.3d 1099, 1103 (9th Cir. 2000).

23

24  **PRELIMINARY MATTER**

25

26       On April 20, 2009, after TWC had filed its Reply in Support of the Motion, Plaintiff filed

27  the Declaration of Expert Witness Robert Sniderman ("Sniderman Declaration") in Opposition

28  to the Motion.  TWC has filed a motion *in limine* to preclude the testimony and report of Robert

Sniderman.  TWC contends that because Sniderman, a "vocational rehabilitation specialist," "offers only legal analysis, intruding into the province of the Court," his report is improper expert testimony and must be stricken.  (Motion *in Limine* 3:16.)  The Court agrees.  The Sniderman Declaration offers improper legal conclusions, including findings that TWC failed to engage in an interactive process with Plaintiff and that TWC failed to accommodate Plaintiff's disability.  *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008) ("An expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law."); *see also French v. Providence Everett Med. Ctr.*, 2008 WL 4186538 at *3 (W.D. Wash. Sept. 8, 2008) (declining to consider an expert report opining on whether the parties "engaged in the interactive process in good faith as required by the ADA," as the report "contain[ed] opinions on legal issues reserved for the Court.").  The motion *in limine* is granted, and the Court will not consider the Sniderman Declaration.

## ANALYSIS

## 1.   PLAINTIFF'S FIRST CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF THE FEHA

Plaintiff's first claim for relief asserts that TWC "terminated Plaintiff based on the fact that Plaintiff had back surgery which posed minor physical limitations."  (Compl. ¶ 22.)  In his Opposition, Plaintiff also contends that TWC terminated him because he became eligible for long-term disability benefits.  TWC argues that this claim fails.

Under the FEHA, it is an unlawful employment practice for an employer to discharge an individual from employment because of a physical disability.  Cal. Govt. Code § 12940(a).  Disability discrimination claims under the FEHA are evaluated using a "shifting burden" analysis.  First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff cannot establish a prima facie case, summary judgment for the employer is warranted.  If the plaintiff does establish a prima facie case, the burden shifts to the employer to articulate a

1   legitimate, non-discriminatory reason for the adverse employment action.  Once the defendant

2   does so, the plaintiff may "attack the employer's proffered reasons as pretexts for

3   discrimination" or "offer any other evidence of discriminatory motive."  *Guz v. Bechtel Nat'l,*

4   *Inc.*, 24 Cal. 4th 317, 356 (2000).

5          To establish a prima facie case of disability discrimination under the FEHA, a plaintiff

6   must show that: (1) he suffers from a disability; (2) with or without reasonable accommodation,

7   he could perform the essential functions of the employment position held or desired; (3) he was

8   subjected to an adverse employment action; and (4) the adverse employment action occurred

9   under circumstances raising an inference of discrimination.  *Guz*, 24 Cal. 4th at 355; *Jensen*, 85

10  Cal. App. 4th at 254.  A plaintiff's evidentiary burden is "minimal."  *Caldwell v. Paramount*

11  *Unified Sch. Dist.*, 41 Cal. App. 4th 189, 197 (1996).  Here, TWC contends that Plaintiff cannot

12  establish that he is a "qualified individual" or that an adverse employment action occurred under

13  circumstances raising an inference of discrimination.  The Court disagrees.  Plaintiff has set forth

14  evidence showing that he could have performed his job as a field supervisor with reasonable

15  accommodation.  (*See* Migliore Decl.)  Plaintiff has also shown that he was terminated under

16  circumstances raising an inference of discrimination.  (*See* Gilmour Dep. Ex. 13; Cope Dep. Ex.

17  12.)  Plaintiff has established a prima facie case of disability discrimination.

18         Next, the Court finds that TWC has successfully articulated a legitimate, non-

19  discriminatory reason for Plaintiff's termination: Plaintiff's inability to complete the essential

20  functions of his job with or without reasonable accommodation.  But the Court also finds that

21  Plaintiff has provided evidence creating a genuine issue of material fact as to whether TWC's

22  proffered non-discriminatory reason is pretextual.  While Cope and Casaw denied that Plaintiff's

23  eligibility for long-term disability benefits affected the termination decision, Plaintiff has

24  submitted evidence showing that the decision to terminate him likely occurred shortly after he

25  was approved for long-term disability benefits.  (*See* Cope Dep. 90:25-91:6; Gilmour Dep. Ex.

26  13.)  Plaintiff also testified that Casaw told him he would be terminated, and the emails between

27  Plaintiff and Gilmour contain the same statement.  (Hood Dep. 172:14-15; Gilmour Dep. Ex.

28  13.)  The Court cannot find, as a matter of law, that Plaintiff's termination was not the result of

1  unlawful discrimination.

2      The Motion for Summary Judgment is DENIED as to Plaintiff's first claim for relief.

3

4  **2.   PLAINTIFF'S SECOND CLAIM FOR FAILURE TO ACCOMMODATE IN**

5       **VIOLATION OF THE FEHA**

6

7      Plaintiff's second claim for relief asserts that TWC failed to reasonably accommodate

8  Plaintiff's physical disability by "requiring Plaintiff to be without any physical limitation

9  whatsoever before permitting him to return to work" and by "not accommodating Plaintiff's

10 limitation to lift a certain amount of weight, something that was not an essential job function in

11 the first place and simply pretext to preclude Plaintiff from returning to work."  (Compl. ¶ 29.)

12 TWC argues that this claim fails.

13     Under the FEHA, it is an unlawful employment practice for an employer to "fail to make

14 reasonable accommodation for the known physical or mental disability of an applicant or

15 employee."  Cal. Govt. Code § 12940(m).  A "reasonable accommodation" includes "[j]ob

16 restructuring, part-time or modified work schedules, reassignment to a vacant position,

17 acquisition or modification of equipment or devices, adjustment or modifications of

18 examinations, training materials or policies, the provision of qualified readers or interpreters,

19 and other similar accommodations for individuals with disabilities."  Cal. Govt. Code §

20 12926(n)(2); Cal. Code Regs tit. 2, § 7293.9(a)(2).

21     An employer is not required to choose the best accommodation or the specific

22 accommodation that a disabled employee seeks.  *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App.

23 4th 215, 228 (1999).  The FEHA requires only that the accommodation chosen be "reasonable."

24 Cal. Gov. Code §§ 12940(a), (m).  The obligation to reassign an employee who cannot otherwise

25 be accommodated "does not require creating a new job, moving another employee, promoting

26 the disabled employee, or violating another employee's rights under a collective bargaining

27 agreement."  *Hastings v. Dept. of Corrections*, 110 Cal. App. 4th 963, 978; *Spitzer v. Good*

28 *Guys, Inc.*, 80 Cal. App. 4th 1376, 1389 (2000).  Further, the FEHA does not require an

1   employer to create a new position for an employee, or a temporary light-duty assignment where

2   no such position existed previously. *See Watkins v. Ameripride Servs.*, 375 F.3d 821, 828-29

3   (9th Cir. 2004) (employer not required to create new position); *Raine v. City of Burbank*, 135

4   Cal. App. 4th 1212, 1227 (2006) (employer not required to create light-duty assignment that

5   previously did not exist). Finally, an employer is not required under the FEHA to eliminate

6   "essential functions" of a job, or reallocate them to other employees. *See Stoll v. Hartford*, 2006

7   U.S. Dist. LEXIS 81781, *27 (S.D. Cal. 2006); *Parish v. Consolidated Eng'g Lab*, 1997 U.S.

8   Dist. LEXIS 15879, *24, *31 (N.D. Cal. 1997); *Wilmarth v. City of Santa Rosa*, 945 F. Supp.

9   1271, 1278 (N.D. Cal. 1996).

10        To prevail in defending a reasonable accommodation claim, an employer must prove that:

11   "(1) a reasonable accommodation was offered and refused; (2) there simply was no vacant

12   position within the employer's organization for which the disabled employee was qualified and

13   which the disabled employee was capable of performing with or without an accommodation; or

14   (3) the employer did everything in its power to find a reasonable accommodation, but the

15   informal interactive process broke down because the employee failed to engage in discussions in

16   good faith." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000). Here, TWC argues

17   that it is entitled to summary judgment because Plaintiff refused the reasonable accommodations

18   TWC offered him and because Plaintiff failed to engage in discussions in good faith. The Court

19   disagrees.

20        TWC granted Plaintiff several months of leave time, and the Court finds that Plaintiff's

21   extended leave of absence constituted a reasonable accommodation under FEHA. *See Hanson*,

22   74 Cal. App. 4th at 226 ("a finite leave can be a reasonable accommodation under FEHA"); *Le*

23   *Bourgeois v. Fireplace Manufacturers, Inc.*, 68 Cal. App. 4th 1049, 1060 (1998) (holding that

24   employer reasonably accommodated disabled employee under FEHA by providing recuperative

25   leave); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989) *cert. denied*, 111 S. Ct. 53

26   (1990) (concluding that a leave of absence of limited duration is a reasonable accommodation).

27   While Plaintiff asserts that he preferred to return to work immediately and simply be excused

28   from certain tasks, the FEHA does not require employees to provide employees with the best

accommodation or the specific accommodation that a disabled employee seeks. *See Hanson*, 74 Cal. App. 4th at 228.  After determining that it could not offer Plaintiff any more leave, however, TWC failed to offer Plaintiff any reasonable accommodations and instead terminated him.

TWC contends that it attempted to reassign Plaintiff to a vacant position within the company, with no change in pay, either on a permanent basis or until Plaintiff could return to his original position.  Plaintiff points out that TWC never "offered" him any of the positions, but instead expected him to compete with other qualified employees for the positions.  Indeed, Cope testified that if someone more qualified than Plaintiff had applied for the positions, the more qualified applicant would have been hired.  (Cope Dep. 150:21-23.)  Under California law, merely allowing an employee to apply for a job on the same terms as other applicants does not constitute "reassignment to a vacant position" as a reasonable accommodation under the FEHA. "Reassignment involves more than a mere opportunity for disabled employees to compete." *Jansen*, 85 Cal. App. 4th at 262 (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1118 (9th Cir 2000)).  The Court finds that Plaintiff did not refuse a reasonable accommodation given to him. TWC has also failed to establish that Plaintiff did not engage in discussions in good faith.  In fact, the evidence overwhelmingly shows that Plaintiff was diligent and persistent in his efforts to return to work.  TWC is not entitled to summary judgment on Plaintiff's claim for failure to accommodate under FEHA.

The Motion for Summary Judgment is DENIED as to Plaintiff's second claim for relief.

**3.   PLAINTIFF'S THIRD CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

Plaintiff's third claim for relief alleges that TWC wrongfully terminated him in violation of public policy.  This claim is derivative of Plaintiff's FEHA claim for wrongful termination, and Plaintiff asserts no allegations supporting this claim beyond those asserted to support his FEHA claim.  TWC argues that "Plaintiff's public policy claim is only as valid as his statutory claims."  (Mot. 24:11.)  Because Plaintiff has failed to state a statutory claim for wrongful

1   termination, TWC argues, this claim must be dismissed.  But the Court found in Section 1 of this

2   Order that TWC is not entitled to summary judgment on Plaintiff's wrongful termination claim

3   under the FEHA, and TWC's argument fails.

4         The Motion for Summary Judgment is DENIED as to Plaintiff's third claim for relief.

5

6   **4.     PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES**

7

8         TWC finally asserts that Plaintiff has no basis to recover punitive damages.  The Court

9   agrees.  An award of punitive damages requires proof by clear and convincing evidence of

10  malice, oppression, or fraud.  Cal. Civ. Code § 3924(a); *Basich v. Allstate Ins.*, 87 Cal. App. 4th

11  1112, 1118-21 (2001).  The "clear and convincing" standard requires a finding that the evidence

12  be "so clear has to leave no substantial doubt" and "sufficiently strong to command the

13  unhesitating assent of every reasonable mind."  *Mock v. Mich. Millers Mutual Ins. Co.*, 4 Cal.

14  App. 4th 306, 332 (1992) (internal citation omitted).  Here, Plaintiff has submitted very little, if

15  any, evidence of malice, oppression, or fraud.  The Court finds, as a matter of law, that Plaintiff

16  is not entitled to punitive damages.

17        The Motion for Summary Judgment is GRANTED as to Plaintiff's request for punitive

18  damages.

19

20  **DISPOSITION**

21

22        Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

23

24  IT IS SO ORDERED.

25  DATED: April 30, 2009

26

27  _____

28                    Andrew J. Guilford
                  United States District Judge